THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JESSE HALES                                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 2:20-cv-111-TBM-MTP

CITY OF HATTIESBURG,
TOBY BARKER, and JOHN DOE 1-10                                 DEFENDANTS

---

## MEMORANDUM BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

---

Defendants file this Memorandum Brief in Support of Motion for Summary Judgement and state in support:

### INTRODUCTION

1.      Jesse Hales was fired from his job as a Hattiesburg fireman for racially offensive Facebook posts.   He was not fired because of his race, and he has no evidence to support his claim for race based discrimination.  Hales's statements, made in the midst of a personal argument, were not on matters of public concern and are not protected under the First Amendment. Even if the statements were entitled to protection, City of Hattiesburg's interests in promoting efficiency of its public services outweigh Hales's interest under the *Pickering* balancing test.

### FACTS

2.      Hales was a firefighter with the City of Hattiesburg until he was terminated on June 4, 2020, for racially offensive Facebook posts on Tom Garmon's "Hattiesburg Patriot News Media" page.[1]

---

[1] https://fb.watch/3-neaqgNDe/

1

3.      In the aftermath of George Floyd's death under the knee of a Minneapolis, Minnesota police officer on May 25, 2020, there was nationwide outrage, which included a peaceful walking protest down Hardy Street in Hattiesburg, Mississippi on May 31, 2020.  The event was broadcast live on social media through Garmon's page.

4.      At the time of this motion, Garmon's posting regarding the protest had 53,000 views and 665 comments, with Hales making several posts. Hales's profile picture at that time depicted him in a firefighter's uniform standing in front of a City of Hattiesburg firetruck.  Many commentors were posting about excessive force and police brutality, an issue of public importance.  Hales, however, entered into a personal argument with another commentor, Royal Caines, in which he made racially offensive comments. These statements were an issue of only private concern.  While on duty and working as a fireman, Hales commented,

> Royal Caines … Take your crap argument elsewhere. Oh and the Irish slaves were beaten, drawn and quartered, skinned alive, and other horrible violent acts. **You don't here (sic) us bitching about it. Get over yourself, if "your people" want a good life go get it and stop taking it from other tax payers and relying on the government**.
> &#42;&#42;&#42;
> Royal Caines oh boohoo. Name one major society/country where it's easier for a black person to prosper and be successful. I'll wait.

Exhibit "1B."

5.      In response to Hales's statement, Shaneka Strahan responded "Jesse Hales What are you implying Mr. Fireman???" *Id.*  Another person, NuNu Johnson, responded by linking the posting to the Hattiesburg Fire Department City of Hattiesburg Government page and stating "please tell me that this man is not responsible for pulling Africa (sic) Americans from a fire? How many people has he left in a burning building due to Its Our Own Fault. I demand he be fired. If he thinks us not being successful is our own fault maybe the fires are too." See fn.1.

2

6.     Johnson and Tracie King further separately forwarded Hales's comments with complaints to the City of Hattiesburg's Mayor's Office.  Exhibit "1A."

7.     The messages were brought to the attention of Hattiesburg Fire Department leadership, with Chief Sherrocko Stewart convening a pre-action committee to gather information and review it with Hales. See Stewart Affidavit, Exhibit "1."

8.     Hattiesburg's policies clearly prohibit "remarks that degrade… race…of the public in any manner that is insulting or offensive" and conduct that "impairs the efficiency of the department," and "dishonors the department's reputation." Exhibit "1D."  Hales admitted that he was trained in Hattiesburg's policies and understood that he could not disparage the public based on race.  Hales Deo., Exhibit "5" at 64.

9.     Hales's admitted in his deposition that he understands how his comments could be reasonably perceived as racist and racially offensive.  Hales Deo., Exhibit "5" at 58, 75 and 80. Chief Stewart found that Hales's statements were a major violation and determined that he should be terminated. Exhibit "1." Mayor Toby Barker agreed. Barker Deposition, Exhibit "2."

10.    Hales was terminated in writing for his racially offensive statements. Exhibit "1C."

11.    Hales appealed the termination to the Civil Service Commission, which held a hearing on July 15, 2020. Hales admitting to making the statements on duty. Transcript, Exhibit "3" at 29.  During the hearing, Hales apologized numerous times for what he said and the manner in which he said it. *Id.* at 7, 9, 22.  Hales ultimately admitted that his statements were a mistake.  Exhibit "5" at 69. The Commission affirmed the decision to terminate Hales.  Exhibit "3" at 78-79.

## ARGUMENT

**I.**    <u>**Hales has no evidence to support a claim his termination was based on race.**</u>

12.    Title VII and § 1981[2] claims are both considered under the burden-shifting

framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Hales must

carry the initial burden of establishing a prima facie case of discrimination.  He may prove Title

VII or § 1981 claims by direct or circumstantial evidence.  To establish a prima facie Title VII or

§ 1981 case, he must show the following:  (1) he is a member of a protected group; (2) was

qualified for the position at issue; (3) was discharged or suffered some adverse employment

action by the employer; and (4) was replaced by someone outside his protected group or was

treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

13.    Hales is unable to establish a prima facie case because he has no evidence to

support the fourth element, entitling Defendants to summary judgment on Plaintiff's claim for

race discrimination.[3]  *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.

1988)(stating, "where a party fails to establish the existence of an element essential to his case

and on which he bears the burden of proof. A complete failure of proof on an essential

element renders all other facts immaterial because there is no longer a genuine issue of material

fact.").

14.    Assuming, for argument's sake, these elements are satisfied, the burden shifts to

Hattiesburg to provide a legitimate, non-discriminatory reason for its employment decision.

*Moss v. BMC Software Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).  If Hattiesburg articulates a

---

[2] Defendants have also previously moved to dismiss Hales's Title VII and Title 42 U.S.C. § 2000e claims due to failure to exhaust administrative remedies. See Defendants Motion for Partial Summary Judgment, Doc. 20 and Rebuttal (clarification of misnomer), Doc. 23.

[3] Hales stated in his deposition that he was an American citizen, and this was his protected class.  Exhibit "5" at 38.

legitimate, non-discriminatory reason for the employment decision, Hales is afforded an opportunity to rebut Hattiesburg's purported explanation, to show that the reason given is merely pretextual. *Id.*

15. Defendants have articulated a legitimate, non-discriminatory reason for the decision to terminate Hales. Hales was terminated for his racially offensive statements, while on duty, using a picture that appeared to depict him as representing the City of Hattiesburg Fire Department.

16. Defendants have consistently maintained prior to his termination, at his termination, and after his termination that Hales was fired for his racially offensive statements, in violation of city policy. Exhibits 1, "1C," 2, 3, and Chief Stewart Depo, Exhibit "4" at 24.

17. Hales stated in his deposition that no one informed him that he was terminated for a race based reason and that he had no evidence he was terminated for a race based reason. Hales Depo., Exhibit "5" at 42-43.

18. One avenue Hales might attempt to use to establish pretext is desperate treatment. Hales was asked about desperate treatment and the allegations of his Complaint. Hales states in Paragraph 24 of his Complaint that "Other employees who have been accused of objectively racially charged accusations which have made the news have not been terminated." Hales was asked about this in his deposition, and he stated he did not recall who the individuals were that made the statements, only that they were about Donald Trump. Exhibit "5" at 40. Hales stated he did not know if Hattiesburg was even aware that such statements were made. Exhibit "5" at 41. Even if Hales was able to establish that the individuals who made the statements about Donald Trump were known by Hattiesburg and they were made by someone of a different protected class, such statements are political statements and not derogatory, race-based

5

statements. As such, Hales claim for pretext fails because he cannot show an appropriate comparative. Disparate treatment occurs when an employer treats one employee more harshly than other "similarly situated" employees for "nearly identical" conduct. *Lee v. Kansas City S.Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). The Hattiesburg employees to whom Hales is unable to identify are not appropriate comparators. See *Vaughn v. Wood Forest Bank*, 665 F.3d 632, 637 (5th Cir. 2011).

19.     In *Carney v. City of Dothan*, 158 F. Supp. 3d 1263 (M.D. AL 2016), an African American female police officer sued, based in part on a claim that she was improperly discriminated against based on race due to Facebook posts. The court in *Carney* found that the plaintiff failed to make a out a prima face case because she could not show that the Department treated similarly situated white officers more favorably. The court noted that "these officers cannot be considered similarly situated because their posts were not objectionable in the way [plaintiff's] posts were." *Id.* at 1282. The Court further found that "the Department determined, after a full investigation, that [plaintiff's] Facebook commentary ran afoul of its established policies. This is sufficient to constitute a legitimate, nondiscriminatory reason under the *McDonnell Douglas* framework." *Id.*

20.     The Court should grant summary judgment on Hales's race based discrimination claim because he is unable to set forth a prima facie case, and Hattiesburg has set forth a nondiscriminatory reason for his termination.

## II.     The §§ 1981 and 1983 claims fail because Hattiesburg had no policy, practice, or custom of discrimination.

21.     Under the *Monell* framework, Hattiesburg is potentially liable if it had a policy, practice, or custom of discrimination. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

6

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an

official policy; and a violation of constitutional rights whose 'moving force' is the policy or

custom." *Edmonds v. City of Hattiesburg*, 2:11-CV-102-KS-MTP, 2012 WL 5930610, at *1

(S.D. Miss. 2012).

22.     That is not the case.  Hattiesburg has a clear policy against discrimination of any

kind.  The anti-discrimination policy states:

> The City of Hattiesburg is committed to providing employment
> opportunities for all qualified employees and applicants.  The City of
> Hattiesburg also seeks to employ the most competent, qualified, and
> motivated individuals into available positions, while remaining in
> compliance with federal and state requirements against discrimination.  The
> City of Hattiesburg does not and shall not discriminate on the basis of race,
> gender, gender identity, sexual orientation, personal or family genetic
> predisposition, age, religious beliefs, national origin, veteran, and/or
> disability status…

City of Hattiesburg Employee Handbook, Exhibit "6" at 7.

23.     In *Edmonds v. City of Hattiesburg*, 2012 WL 5930610, at *1 (S.D. Miss. 2012),

the plaintiff alleged he was discharged because of unlawful racial discrimination.  He asserted

claims under 42 U.S.C. § 1983, *inter alia.*  The defendant argued that the plaintiff had no

evidence of a municipal policy or custom which was the moving force behind the alleged

violation of 42 U.S.C. § 1983 and presented evidence that the city observes an "Equal

Opportunity Policy" which provides that "[n]o employee shall be discriminated against because

of race, color, religion, national origin, sex, age, disability or veteran status." In response, the

plaintiff "merely argued that discrimination occurred, regardless of the City's policy." This Court

found summary judgment was appropriate because the plaintiff failed to present "any evidence

that a municipal custom or policy was the moving force behind the alleged discriminatory

actions." *Id.* at *2.

24.     Similarly, in *Boutwell v. Singing River Hosp. System*, 2006 WL 21558, at *1 (S.D. Miss. 2006), the plaintiff alleged she was discharged based on discrimination. This court granted summary judgment, finding that the plaintiff failed to come forward with any proof in satisfaction of the required three elements. *Id.* at *4.

25.     Hattiesburg is entitled to summary judgment under *Monell*.

**III.     Mayor Barker is entitled to qualified immunity.**

26.     To determine whether qualified immunity applies, the Court must determine (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct is objectively unreasonable in light of the clearly established law when the incident took place. *Felton v. Polles,* 315 F.3d 470, 477 (5th Cir. 2002). "…[D]efendants are protected by qualified immunity unless objectively reasonable officials in their position would have been aware that the specific actions alleged and shown by summary judgment proof violated the statutory rights conferred by § 1981." *Khan v. S. U. A & M College*, CIV.A. 00-0255, 2006 WL 845763, at *4 (W.D. La. Mar. 29, 2006), *aff'd in part and remanded sub nom. Early v. S. U. & Agr. & Mech. College Bd. of Sup'rs*, 252 Fed. Appx. 698 (5th Cir. 2007)(unpublished).

27.     Hales is unable to set forth any authority establishing that the facts of this case are consistent with a prior precedent finding a violation of a clearly established right to be free from race based discrimination or a that his termination was in violation of his clearly established First Amendment right.

28.     Mayor Barker was informed of the circumstances and facts regarding Hales statements, and he agreed with Chief Stewart that Hales should be terminated.  Hales agreed with Chief Stewart that, based on the complaints, Hales's statements, if left unchecked, would

adversely affect the City's ability to render fire protective services to all citizens of all races.

Mayor Barker's action, in reliance upon the head of the Fire Department, was reasonable. See

*Brinston v. Dunn*, 928 F. Supp. 669, 672 (S.D. Miss. 1996), applying qualified immunity to an

employment termination case based on First Amendment and quoting *Noyola v. Texas*

*Department of Human Resources,* 846 F.2d 1021, 1025 (5th Cir.1988) for its statement that

"There will rarely be a basis for a *priori* judgment that the termination or discipline of a public

employee violated 'clearly established' constitutional rights" where the courts must engage in a

case-by-case balancing of competing interests.

## IV.    Hales's racially offensive speech is not protected under the First Amendment and Hattiesburg's interests outweigh his interests.

29.     A public employee generally has "no right to object to conditions placed upon the

terms of employment-including those which restricted the exercise of constitutional rights."

*Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  "[T]he prohibition on encroachment of First

Amendment protections is not an absolute. Restraints are permitted for appropriate reasons."

*Elrod v. Burns*, 427 U.S. 347, 360 (1976).  "Whether speech is entitled to First Amendment

Protection is a question of law." *Kelleher v. Flawn*, 761 F.2d 1079, 1084 (5th Cir. 1985).

"[W]hether the speech of a public employee is entitled to constitutional protection is analyzed

under a four-prong test. In order to prevail on a First Amendment retaliation claim, a public

employee plaintiff must establish that: (1) she suffered an adverse employment decision; (2) her

speech involved a matter of public concern; (3) her interest in speaking outweighed the

governmental defendant's interest in promoting efficiency; and (4) the protected speech

motivated the defendant's conduct." *Gibson v. Kilpatrick,* 734 F.3d 395 (5th Cir. 2013).

30.     If a court determines that an employee is not speaking in their role as an

employee, but rather as a citizen on a matter of public concern, "the possibility of a First

Amendment claim arises." *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006).  To determine

whether the First Amendment protects the employee's speech, a court proceeds to the balancing

test established by the Supreme Court in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

The *Pickering* test inquires whether the interest of the government employer "in promoting the

efficiency of the public services it performs through its employees" outweighs the employee's

interests, as a citizen, "in commenting upon matters of public concern." *Id.* at 568.

Whether a person spoke as a citizen on a matter of public concern requires two separate

questions: (1) was the subject of her speech a matter of public concern and (2) did she speak as a

citizen rather than an employee. The court must answer, as a matter of law, if the speech

addresses a matter of public concern after examining the "content, form, and context of a given

statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147 (1983).

A.   **Hales's statements were not protected speech because they were not matters of**
     **public concern.**

       31.     Speech involves a matter of public concern when it is made primarily in the

speaker's role as a citizen rather than as an employee addressing only matters of personal interest.

*Id.* at 146-147.  Furthermore, "[m]atters of public concern are those which can 'be fairly

considered as relating to any matter of political, social, or other concern to the community.'"

*Branton v. City of Dallas,* 272 F.3d 730, 739 (5th Cir.2001). "[A]n employee cannot transform a

personal conflict into an issue of public concern simply by arguing that individual concerns

might have been of interest to the public under different circumstances." *Markos v. City of*

*Atlanta,* 364 F.3d 567, 570 (5th Cir. 2004), citing *Bradshaw v. Pittsburg Independent School*

*Dist.,* 207 F.3d 814, 816 (5th Cir. 2000).

       32.     Facts regarding the context of Hales's statements include the fact that Hales

appeared in his profile picture in his official uniform, standing in front of a city owned firetruck.

10

The further fact that someone identified him as "Mr. Firemen" further indicates his statements were reasonable received by the public as being made by a Hattiesburg employee in such a capacity. Hales further admits to being on duty at work while making the statements. Exhibit "3" at 29. See Hales Depo., admitting his statements were viewed as being made by a Hattiesburg employee. Exhibit "5" at 76-77.

33.     The content of Hales's statements, blaming black people for failing to take advantage of societal opportunities and stating that they did not have a "good life" because they relied upon the government and taxpayers, were not matters of public concern but rather person insults directed at an individual, Royal Cains. The context of these statements was interlaced with specific personal clarifiers, including "take your crap argument elsewhere," "you don't here [sic] us," "Get over yourself," and "if 'your people.'" These racially derogatory comments were directed at one individual, with generalized racial insults, which are not an area of public concern.

34.     Hales cannot transform his personal insults into a matter of public concern simply because they were made on a post about issues there were of public concern, being protests about police brutality.   In *Markos v. City of Atlanta,* 364 F.3d 567, 570 (5th Cir. 2004), the court stated, "an employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might have been of interest to the public under different circumstances." *Markos v. City of Atlanta,* 364 F.3d 567, 570 (5th Cir.2004), citing *Bradshaw v. Pittsburg Independent School Dist.,* 207 F.3d 814, 816 (5th Cir. 2000). See e.g. *Dixon v. City of Crowley, Texas,* 3-05-CV-1071-BD, 2007 WL 2027384, at *3 (N.D. Tex. July 11, 2007), stating "It is clear that plaintiff's statement to Rodney Wallace, in which he referred to Greg Arlington as a 'backstabbing motherf_____ just like Kirk Nemitz,' did not involve a matter of public

11

concern." *Taylor v. City of Falmouth*, CV 03-142-DLB, 2005 WL 8165585, at *8 (E.D. Ky. Mar.

9, 2005)(finding someone calling someone a "black bastard" not protected speech). *Dennis v. Bd.*

*of Educ. of S. Orange-Maplewood*, CV 04-1218 (JCL), 2006 WL 8457607, at *6 (D.N.J.

2006)(stating, "wearing the racially offensive pin and demanding that students pick sides is not

protected speech because such actions triggered disharmony between Black and White co-

workers, and among his students.")

**B.**     **Hattiesburg's interests in providing first responder services outweigh Hales interests.**

35.     Firemen, as first responders, provide intimate services to Hattiesburg's citizens.

They respond to and go into citizens' homes, who are vulnerable and often experiencing a life-

threatening fire or medical emergency.  Firemen go into businesses, as law enforcers, to perform

inspections to ensure compliance with the applicable fire codes. Citizens expect equal, unbiased

treatment, and acts that discredit the integrity of the Fire Department threaten the efficient and

effective administration of these services.  With one person informing the City of Hattiesburg

that, based on these comments, "I just don't see how he can save black lives form fires feeling

this way," the damage of Hales's statements is apparent.  Exhibit "1A."

36.     In *Doggrell v. City of Anniston, AL*, 277 F.Supp.3d 1239 (N.D. AL 2017), an

officer was a member of a white nationalist organization and made a speech in support of their

ideals. The court noted that "a law enforcement agency has a 'heightened need for order, loyalty,

morale and harmony, which affords a police department more latitude in responding to speech of

its officers than other governmental employers.'"  The City of Anniston, like this case, received

numerous complaints on Facebook. The court found that plaintiff's interest in speech was

outweighed by Anniston's interests in maintaining order, loyalty, morale, and harmony within

the APD and throughout the community."

12

37.     Similarly, in *Carney v. City of Dothan,* 158 F. Supp. 3d 1263 (M.D. AL 2016), a police officer filed suit alleging she was terminated in violation of her First Amendment rights due to Facebook comments.  The court, applying the *Pickering* balancing test, considered "whether the employee's speech impairs the ability of superiors to discipline subordinates, affects harmony among coworkers, impairs working relationships for which loyalty and confidence are necessary or interferes with the operation of the government entity." *Id.* at 1286. The Court found that, due in large part to the complaints, which included a complaint from a citizen, "the scale tips in favor of City of Dothan." The Court noted "at least one citizen took to an online discussion forum to speak out against Carney's behavior, indicating the erosion of the community's trust in the Department as a result of the speech. It is clear that the interest of the City of Dothan in ensuring efficient operation of the Department outweigh the interests of Carney in exercising her limited First Amendment rights." *Id.*

38.     Fire Departments, similar to police departments, have an interest in preserving the harmony and integrity of working relationships within the department and with citizens.  See *McClernon v. Beaver Dams Volunteer Fire Department, Inc.*, 489 F.Supp.2d 291 (W.D. NY 2007)(finding department's interests outweighed employees interest in writing a letter and citing *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 58 (2nd Cir. 1987) for its finding that "fire department had interest in maintaining 'esprit de corps'")). See Transc., Exhibit "3" at 50 and 60 noting potential for disruption due to comments.

39.     Even if the Court were to consider Hales's statements of public interest, the nature of the insults toward one individual and a race of people is of little to no value when compared to the interests of Hattiesburg Fire Department to provide fire protective services.  Hales agreed in

his deposition that Hattiesburg has a substantial interest in ensuring its employees do not make racist comments. Exhibit "5" at 49.

40.     The Court should find Hales's statements are not entitled to First Amendment protection, or, alternatively, that under a Pickering analysis, Hattiesburg's interests outweigh Hales's interests.

WHEREFORE, Defendant, requests this Court grant summary judgment dismiss the case and all claims with prejudice.

RESPECTFULLY SUBMITTED, this the 12th day of March, 2021.

/s/ Lane Dossett
L. CLARK HICKS, MSB No. 8963
R. LANE DOSSETT, MSB No. 102927
*Attorneys for Defendants*

HICKS LAW FIRM, PLLC
211 South 29th Avenue, Suite 201 (39401)
Post Office Box 18350
Hattiesburg, MS  39404-8350
Telephone:  601.544.6770
Facsimile:  601.544.6775
Email: lane@hicksattorneys.com

14

## **CERTIFICATE OF SERVICE**

I, Lane Dossett, do hereby certify that I have this day electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system, which sent notification of such

filing to registered users.

This the 12th day of March, 2021.

/s/ Lane Dossett
L. CLARK HICKS, MSB No. 8963
R. LANE DOSSETT, MSB No. 102927
*Attorneys for Defendants*
